UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Charlise Pickett | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 15-cv-749 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| Housing Authority of Cook County | ) |
| and Richard Monocchio, in his official | ) |
| capacity as Executive Director of Housing | ) |
| Authority of Cook County, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Charlise Pickett has sued the Housing Authority of Cook County and Richard Monocchio, in his official capacity as Executive Director of Housing Authority of Cook County (collectively, "HACC"), for terminating her from the Housing Choice Voucher Program. Pickett alleges that HACC terminated her housing voucher without cause and without an opportunity for a hearing in violation of the Fourteenth Amendment to the United States Constitution and the Housing Act of 1937.[1]

Currently pending before the court are HACC's motion to dismiss, which was fully briefed, and Pickett's motion for a preliminary injunction. On July 7, 2015, the court held a hearing on Pickett's motion for preliminary injunction. For the reasons set forth herein, HACC's motion to dismiss is denied, and Pickett's motion for preliminary injunction is granted as to her request for a due process hearing but denied as to her request for immediate receipt of a voucher.

---

[1] Pickett brings her claim for violation of the Due Process Clause pursuant to 42 U.S.C. § 1983.

## I. HHAC's Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Pickett's Allegations

Pickett began participating in the voucher program in 2003. At that time, she had two minor children. In August 2012, Pickett sought to move to larger space to accommodate her increased family size, as she had had two additional children. Pickett and her landlord entered into a mutual release of the lease. Pickett obtained a Request for Tenancy Approval ("RFTA") packet from HACC and began looking for new housing.

In September 2012, Pickett found a property owner who was willing to lease a house to her at the address, 22436 Lake Shore Drive, Richton Park, IL 60471. Pickett submitted the RFTA, signed by the owner of the property, to HACC, as well as a proposed lease and tenancy

addendum.  In January 2013, HACC determined that the property passed its Housing Quality Standards ("HQS") inspection.  HACC also negotiated a rent with the landlord in January 2013.[2]

Pickett and her family moved into the property in February 2013.  However, she never entered into a lease with the landlord.  She alleges the landlord would not execute the lease or sign a Housing Assistance Payment ("HAP") contract with HACC because he anticipated losing the property to foreclosure.  When Pickett discovered this information, she requested, and HACC approved, an extension of her voucher on May 3, 2013.  The term of the extension was thirty days.  Pickett sought an additional thirty-day extension in July 2013.  HACC granted this request.

Later in July 2013, Pickett found a unit to rent in Country Club Hills, Illinois.  She and the prospective landlord submitted the required documentation to HACC.   HACC then conducted two HQS inspections; the unit failed the initial inspection but passed the second inspection.  Upon receiving the passing inspection grade, Pickett's landlord asked her to move into the property immediately and provide a security deposit.  She informed the landlord that she was required to wait for HACC's approval before she could comply with his request.  The prospective landlord subsequently "became frustrated with the process and decided not to rent the unit" to Pickett.   (Compl. ¶ 32.)

Once the Country Club Hills location fell through, Pickett had twelve days remaining on her voucher to find new housing for HACC's approval.  Pickett alleges that HACC did not suspend the term of her voucher while processing her request for approval of the Country Club Hills location.

---

[2] The Housing Quality Standards are set forth in the regulations relating to Housing and Urban Development.  *See* 24 CFR 982.401.

In August 2013, Pickett found a new unit to rent in Dolton, Illinois. On August 27, 2013, she submitted tenancy application forms to HACC, except her materials were missing an HACC form that indicates ownership of the property. An HACC representative informed Pickett that she had missed the submission deadline "by only a couple of days" but could have "three more days" to bring the necessary documentation. (*Id.* ¶ 35.) Pickett returned to the owner of the Dolton unit the following day, only to find out that he had decided to rent to a non-voucher holder.

On August 30, 2013, Pickett went back to the HACC office to explain what had happened to her and to request additional time. HACC denied her request and gave her a termination notice, dated that same day.

Pickett submitted a written request to appeal the termination decision in September 2013. She did not receive a response from HACC to her request until December 9, 2013, when a family friend told her that she had received a letter from HACC. HACC had mailed the letter to 17660 Springfield Avenue, Country Club Hills, Illinois 60478—a location Pickett had submitted for HACC approval, but where she had never resided.

The letter, dated November 15, 2013, denied Pickett's request to appeal the decision terminating her participation from the Voucher Program. The letter provided:

> Dear Charlise Pickett:
>
> The Housing Authority of Cook County (the HACC) has received your request dated September 8, 2013 to appeal the decision to terminate your participation in the Housing Choice Voucher Program.
>
> After careful review of your case, the HACC has decided to deny your request for an informal hearing. This decision was made because:

| | Your request was received after the deadline for an appeal. |
|---|---|
| | The reason for request does not require an informal hearing. |
| x | Other: You were issued five extensions on your voucher search and had moving papers from May 2012 until August 2013 and you did not successfully locate a unit for approval before the extended expiration date of your voucher. |

(*See* Compl. Ex. B.)

### C. Discussion

HACC moves to dismiss both Count I and Count II of the Complaint. The court addresses the viability of each claim in turn.

#### 1. Count I: Procedural Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1. "A procedural due process claim requires the plaintiff to show (1) that he was deprived of a protected liberty or property interest, and (2) that he did not receive the process that was due to justify the deprivation of that interest." *Armato v. Grounds*, 766 F.3d 713, 721-22 (7th Cir. 2014). "Accordingly, a plaintiff asserting a procedural due process claim must have a protected property interest in that which he claims to have been denied without due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

The Seventh Circuit has held that participants in the Voucher Program "who had been issued a certification for rent assistance have a property interest in the assistance and must be heard before being expelled from the program. . . ." *Id.* (citing *Simmons v. Drew*, 716 F.2d 1160, 1162 (7th Cir. 1983)). "[J]ust as job tenure is a species of property protected by the Fourteenth Amendment, so too is 'program tenure,' the right of certificate holders to participate in a rent assistance program by seeking out persons willing and able to rent them housing pursuant to the

rules of the program." *Simmons*, 716 F.2d at 1162 (citing *Perry v. Sindermann,* 408 U.S. 593 (1972)).

HACC argues that Pickett was not entitled to a hearing after she was terminated from the Voucher Program because she lost the property interest she held in her voucher when the voucher expired. The court disagrees and finds that HACC's refusal to provide a hearing to Pickett—a participant whose voucher expired allegedly due to circumstances beyond her control and through no fault of her own—constitutes a violation of her procedural Due Process rights.

In *Perry*, the Supreme Court dealt with a similar issue involving an expiring property interest. The plaintiff in *Perry*, a teacher, sued his former employer, a college, after his one-year teaching contract expired and the college both refused to renew it and denied him the opportunity for a hearing "to challenge the basis of the nonrenewal." *Id.* at 595. After finding that the plaintiff raised a genuine issue of fact as to his interest in continued employment, the court ordered that he receive "an opportunity to prove the legitimacy of his claim of such entitlement. . . ." *Id.* at 603. "Proof of such a property interest," the court explained, "would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his non-retention and challenge their sufficiency." *Id.*

HACC's decision—whether couched as one to terminate Pickett's participation from the program or one to refuse her request for an extension—is analogous to the *Perry* defendant's decision not to renew its former teacher's one-year contract. Both the teacher in *Perry* and Pickett in this case alleged a legitimate expectation of a continued benefit—tenure in *Perry*, subsidized housing assistance in this case—that was subject to expiration. Both property interests expired after the defendant chose not to extend the life of the interest to a future

expiration date. In several cases, the Seventh Circuit has likened a claim of entitlement to a voucher to the property interest of tenure. *See Khan*, 630 F.3d at 527-28; *Simmons*, 716 F.2d at 1162-63; *Holbrook v. Pitt*, 643 F.2d 1261, 1277 (7th Cir. 1981).[3] These cases, in conjunction with *Perry*, suggest that HACC must afford Pickett the right to a hearing to challenge the grounds for her termination, even if the sole ground was expiration, so that she may establish a record of the circumstances that led to the voucher's expiration and contest the termination.

HACC contends that pertinent agency regulations authorized it to deny Pickett a post-termination hearing. HACC's position is not groundless: 24 CFR 982.555(b)(4) provides that a public housing agency ("PHA") "is not required to provide a participant family an opportunity for an informal hearing for . . . [a] PHA determination not to approve an extension or suspension of a voucher term." HACC maintains that this regulation allows a PHA to terminate a participant whose voucher expires and deny that participant a hearing to challenge the termination.

HACC's position makes sense in a situation where an individual receives a voucher, makes no attempt to obtain housing, and fails to submit a premise for the housing agency's approval before the voucher expires.[4] But that situation is not this case. Pickett's voucher did not passively expire, as if the world stood still while time pressed forward. Rather, Pickett alleges that she did everything within her control to remain in the program. She submitted two

---

[3] The court recognizes that *Simmons* stated, "A certificate limits the power of a PHA to deny rent assistance to the family that holds it; *until the certificate expires*, it gives the family the right to continue participating in the program so long as the PHA lacks just cause to expel it." 716 F.2d at 1162 (emphasis added). But the italicized language is dicta. *Simmons* did not deal with whether a participant is entitled to a hearing on a PHA decision to terminate the participant from the Voucher Program because the participant's voucher expired.

[4] After all, if HACC could not terminate idle participants, the agency would be hindered in administering the voucher program and carrying out its mission of "promot[ing] adequate and affordable housing. . . ." HACC Housing Choice Voucher Administrative Plan, 1-I.C (2012).

7

units for approval, one in Richton Park and another in Country Club Hills, before her voucher expired. Both passed HACC housing inspections. Pickett moved into the Richton Park location but was forced to relocate after she learned that the property owner would not sign a lease or HAP contract due to a potential foreclosure. The Country Club Hills location fell through because the landlord grew impatient with the Section 8 approval process and decided not to rent the unit to Pickett. Pickett attempted to submit a third unit for approval, but the property owner backed out two days before her voucher was to expire. Pickett went to HACC on the final date of her last extension to explain what happened and request additional time, but HACC denied her request and terminated her effective immediately. Shortly thereafter, HACC rejected Pickett's request for a hearing and appeal of its termination decision. Pickett's allegations compel the court to find that she has stated a claim for HACC's refusal to hold a due process hearing. At such a hearing, Pickett would have had the opportunity to present evidence before a neutral officer, who "could [have found] certain facts and order[ed] a remedy. . . ." *See Fincher v. South Bend Heritage*, 606 F.3d 331, 336 (7th Cir. 2010).

Furthermore, if HACC's understanding of its regulatory obligations is correct, and the regulations allow a PHA to deny a hearing to a participant in Pickett's circumstances who has been terminated because his or her voucher expired, then the regulations are internally inconsistent. On the one hand, there is Section 982.555(b)(4). HACC points to this provision as allowing it to deny a request for a hearing on a "determination not to approve an extension or suspension of a voucher term." Section 982.555(a), on the other hand, obligates a PHA to provide a participant family an opportunity for a hearing in connection with other types of agency determinations. These determinations include:

> (i) A determination of the family's annual or adjusted income, and the use of such income to compute the housing assistance payment.

8

(ii) A determination of the appropriate utility allowance (if any) for tenant-paid utilities from the PHA utility allowance schedule.

(iii) A determination of the family unit size under the PHA subsidy standards.

(iv) A determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552).

(v) A determination to terminate assistance because the participant family has been absent from the assisted unit for longer than the maximum period permitted under PHA policy and HUD rules.

24 CFR 982.555(a).

Section 982.555(a)(iv), in particular, bears on this case because HACC's reasoning for terminating Pickett—expressed both in the notice it sent to Pickett and in the arguments HACC advances in its motion to dismiss—falls squarely within the scope of this provision. In its November 15, 2013 letter, HACC wrote to Pickett:

> After careful review of your case, the HACC has decided to deny your request for an informal hearing. This decision was made because:
>
> ☐ Your request was received after the deadline for an appeal.
>
> ☐ The reason for request does not require an informal hearing.
>
> ☒ Other: You were issued five extensions on your voucher search and had moving papers from May 2012 until August 2013 and you did not successfully locate a unit for approval before the extended expiration date of your voucher.

(*See* Compl. Ex. B.) Notably, HACC did not check the middle box; doing so would have indicated that HACC believed Pickett sought a hearing on a determination that did not require a hearing pursuant to Section 982.555(b)(4). Instead, HACC informed Pickett that it was rejecting her request for a hearing because she "did not successfully locate a unit for approval before the extended expiration date of [her] voucher." HACC thus explicitly explained to Pickett that it had terminated her because of a failure on her part.

9

The language HACC uses in its motion to dismiss also shows that HACC understood the expiration of Pickett's voucher as a reflection of her "failure" to obtain housing. For instance, HACC contends that Pickett's voucher expired "[b]ecause she *failed to act* on the voucher and secure housing between May 2012 and August 2013. . . ."[5] (HACC Mem. at 7-8, ECF No. 8) (emphasis added.) Elsewhere, HACC notes, "Plaintiff *simply failed to utilize* the voucher she was given by the HACC." (*Id.* at 8) (emphasis added.) HACC further remarks that "Pickett was given over one year to use her voucher and *failed to secure* a unit during that time frame." (*Id.* at 9) (emphasis added.) HACC even characterizes Pickett as "hold[ing] the voucher hostage" during the period when she attempted to move. (*Id.*)

The Due Process Clause and Section 925.555(a) require a PHA to provide a hearing on a decision terminating a participant from the Voucher program, because a participant who is actively engaged in seeking housing for PHA approval, and who is otherwise in compliance with the PHA's policies, has a legitimate expectation of remaining in the program.[6] *See Perry*, 408 U.S. at 603; *Simmons*, 716 F.2d at 1162. Euphemistically describing Pickett's termination as merely an "expiration," such that no hearing was required, ignores the fact that Pickett was terminated for a failure to act—based on a view of the relevant facts that may well have been

---

[5] HACC's portrayal of Pickett in its memorandum in support of its motion to dismiss accords with its understanding of Pickett's efforts as reflected in its November 15, 2013 letter. In both documents, HACC maintains that Pickett "fail[ed] to use her voucher. . . ." (*See* HACC Reply Mem. at 3, ECF No. 12 *and* Compl. Ex. 2 ("[Y]ou did not successfully locate a unit for approval before the extended expiration date of your voucher.")).

[6] The court acknowledges that its ruling diverges from precedent in other circuits. *See, e.g., Burgess v. Alameda Hous. Auth.*, 98 Fed. Appx. 603 (9th Cir. 2004); *Ely v. Mobile Hous. Bd.*, 13 F. Supp. 3d 1216 (S. D. Ala. 2014) (summarizing pertinent caselaw).

erroneous. Under these circumstances, a participant must be given the opportunity for a hearing on the termination decision.[7]

So understood, HACC's basis for terminating Pickett was unconstitutional no matter how it is sliced. If HACC expelled Pickett from the Voucher Program because she "failed to act," as HACC's cited statements indicate, then Pickett was an entitled to a hearing because the termination was a determination pursuant to Section 952.555(a)(iv). If HACC expelled Pickett from the program because her voucher expired, as HACC contends in its motion to dismiss, then HACC still made a decision that terminated her program tenure under circumstances that appear to have contravened Pickett's legitimate expectation of continued participation. As a participant in the program for nearly a decade, and assuming as true the facts alleged in her complaint, Pickett was entitled to a hearing on *any* decision that ended her tenure. *See Perry*, 408 U.S. at 603. Because HACC denied her this opportunity for a hearing, its motion to dismiss Count I is denied.

### 2. Count II: The Housing Act of 1927 ("Housing Act")

HACC argues that Pickett cannot state a claim against it under the Housing Act because HACC had the discretion to reject Pickett's requests for an extension of her voucher. It is true that 24 CFR § 982.303 vests a PHA with discretion to "grant a family one or more extensions of the initial voucher term. . . ." But this discretion is not unfettered. An agency action, finding, or conclusion cannot be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he agency must examine the relevant data and articulate a

---

[7] To be clear, entitlement to a hearing is not the same as entitlement to the benefit. *See Eidson v. Pierce*, 745 F.2d 453, 461 n.6 (7th Cir. 1984). A hearing simply serves the purpose of protecting the participant from the risk of an erroneous or arbitrary termination decision. *See Id.* ("A hearing would thus be an effective remedy for the individual because it would provide a reliable means for resolving disputed facts entitling the person to benefits.").

satisfactory explanation for its action including a rational connection between the facts found and the choices made." *Central States Enterprises, Inc. v. Interstate Commerce Com.*, 780 F.2d 664, 674 (7th Cir. 1985) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins.*, 463 U.S. 29, 43 (1983)).

Here, Pickett has sufficiently stated a claim against HACC for exercising its discretion arbitrarily and capriciously. On November 15, 2013, HACC wrote to Pickett that it was denying her request for a hearing because she was "issued five extensions on [her] voucher search and had moving papers from May 2012 until August 2013 and [ ] did not successfully locate a unit for approval before the extended expiration date of [her] voucher." (Compl. Ex. 2.) Pickett's allegations, however, establish that she did "successfully locate" not one, but *two* units for approval. She alleges that she submitted all of the necessary paperwork to process her applications for the units in Richton Park and Country Club Hills, both of which passed HACC's HQS inspection. HACC's reasoning for terminating Pickett, according to its November 15, 2013 letter, is thus predicated on its false assertion that she failed to locate a single unit for approval.

Moreover, Pickett alleges that HACC did not suspend the term of her voucher after she submitted an RFTA for the Country Club Hills unit. (*See* Compl. ¶ 33.) Under the HACC Administrative Plan, "the term of a voucher will be suspended while the HACC processes" an RFTA submission and proposed lease. (Compl. Ex. 1.) If her allegations are proven, Pickett should have had additional time to search for housing within the extended expiration period. These allegations suggest that HACC's termination decision was arbitrary and capricious because it was predicated on incorrect grounds and may have resulted from HACC's failure to follow its own procedures. *See Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 298-99 (5th Cir. 2014).

## II. Pickett's Motion for Preliminary Injunction

### A. Legal Standard

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Ind. Civil Liberties Union v. O'Bannon*, 259 F.3d 766 (7th Cir. 2001). To obtain a preliminary injunction, Pickett must show that she has: "(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If she does so, the court must consider whether the injunction is in the public interest. *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 679 (7th Cir. 2012).

The court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell*, 651 F.3d at 694. "These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't of Human Services*, No. 13 C 1300, 2014 WL 3605633, at *15 (N.D. Ill. July 21, 2014).

### B. Pickett's Motion for Preliminary Injunction

The parties first appeared before the court on Pickett's motion for preliminary injunction on June 24, 2015. On that date, the court set a hearing on the motion for July 7, 2015 and ruled on HACC's pending motion to stay discovery. The court informed the parties that they could conduct discovery, written or oral, insofar as it was relevant to Pickett's motion for preliminary

13

injunction, but that discovery should otherwise be suspended pending the court's ruling on HACC's motion to dismiss.

Despite having nearly two weeks to prepare for the hearing, neither party presented much evidence. The only witness to testify was Pickett, and the only exhibit entered into the record was an exhibit to Pickett's complaint, HACC's November 15, 2013 letter. Pickett's attorneys complained that HACC refused to respond to their discovery requests and produce documentation that would have established a clearer timeline of events. If that were the case, then Pickett's attorneys should have moved to compel before the hearing.

HACC, for its part, added nothing to the record. HACC chose not to file a response brief to Pickett's motion. Nor did HACC introduce any documents or call a witness. Instead, HACC stood on the legal arguments it made in its motion to dismiss that Pickett had failed to state a claim. By taking this path, HACC placed all of its eggs in its motion-to-dismiss basket.

Against this backdrop, the court summarizes the testimony Pickett offered in support of her motion for preliminary injunction.

Pickett's testimony established that she has five minor children. Her youngest child is one-year old. Pickett supports her family through several sources of income. She has a part-time job at MetroSouth Hospital, where she earns $10.75 an hour and works between 16-24 hours a week. Her most recent paycheck was for $300. Pickett also receives $195 per month in social security benefits for one of her children, who is disabled, and $729 per month in survivor's benefits. Pickett receives $152 biweekly in child support. Altogether, Pickett and her five children live on an income of approximately $1,658 each month.

Earlier this month, Pickett was evicted from the apartment where she and her children had lived because Pickett could not afford the rent. Since the eviction, Pickett has been forced to

live apart from some of her children. Pickett, along with one of her daughters, is presently staying with Pickett's aunt in Markham, Illinois. Pickett's son is living with Pickett's sister in Richton Park. Three of Pickett's children, including her one-year old child, are living with Pickett's mother in Centralia, Illinois. It takes Pickett three to four hours to travel from Markham to Centralia to see her three youngest children. This housing situation is especially precarious because Pickett's mother is ill, so Pickett cannot keep her three children there for much longer. Pickett is planning on relocating her three youngest children to her aunt's home, where she is staying. Once that move occurs, Pickett's aunt will be housing a total of eight people in a three-bedroom property, as four people already reside there.

With respect to her participation in subsidized housing, Pickett attempted to provide a timeline, but it was nearly impossible to follow. At times, she gave different dates for the same event. She answered questions about particular housing locations by talking about other housing locations. The court, however, attributed these inconsistencies not to any nefarious motive, but to faulty recollection. Essentially, Pickett testified like someone who is under a great deal of stress might testify. It would have been helpful had counsel presented her with paperwork to refresh her recollection, but counsel asserted that HACC had thus far declined to produce relevant documentation.

Ultimately, the precise dates when Pickett looked for housing or spoke to an HACC representative proved immaterial to the court's analysis. HACC did not challenge Pickett's explanation of her time in subsidized housing, her decision to move, her search for new housing, the problems she encountered attempting to finalize a new rental lease and HAP contract, or her termination from the Voucher Program. HACC presented no case other than to stand by its position that her lawsuit was meritless.

The court, however, has determined that Pickett's lawsuit is not meritless. By focusing solely on whether Pickett has "some likelihood of success on the merits," *Ezell*, 651 F.3d at 694, HACC ran the risk that injunctive relief could be entered against it, if the court denied its motion to dismiss.

Having considered the evidence heard at the hearing, the court finds that Pickett has satisfied the criteria necessary for injunctive relief to issue. The irreparable harm in this case is tremendous. Pickett and her family are staying with relatives temporarily, but they face imminent homelessness. She lives apart from four of her minor children. No remedy at law is adequate relief for the harm she is enduring. And, HACC conceded that Pickett cannot reenter the program as an applicant because it has closed the waiting list, so only a hearing could result in her continuation as a participant.

As for other considerations that affect the balance of harms, HACC presented the court with none. HACC offered no evidence showing that providing Pickett with a due process hearing would cause an administrative burden. And the public interest is seriously disserved by the Pickett family's separation and imminent likelihood of homelessness. In light of the court's ruling on HACC's motion to dismiss, the nature of Pickett's interests, and the harm that will result if a preliminary injunction is denied, the court grants Pickett's motion for preliminary injunction.

In closing, the court notes that discovery may very well prove critical in this case. Important factual questions remain over such topics as the efforts Pickett took to find new housing on the days her voucher period ran; how long HACC took to conduct its inspections after she submitted her RFTA packets; the conversations Pickett had with HACC representatives; whether HACC informed Pickett that she could move into the Richton Park unit after it passed

an inspection; any conditions HACC imposed on Pickett's moving into the Richton Park unit; Pickett's discovery that her landlord at the Richton Park unit would not sign a lease; and whether HACC tolled Picket's voucher after she submitted an RFTA for each proposed unit. By no means are these all of the circumstances the parties should explore in discovery, but they may bear on the merits of Pickett's due process hearing, and they signify that this case is merely the beginning of the road for Pickett to obtain subsidized housing as a participant with HACC. The relief the court awards her today is only the first step: a right to a hearing on her termination from the Voucher Program.

Accordingly, it is hereby ordered that HACC must provide Pickett with a due process hearing to consider its determination that terminated her participation in the Housing Choice Voucher Assistance Program.

Date: July 10, 2015                              /s/

                                                 Joan B. Gottschall
                                                 United States District Judge